**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MELINDA DAY TAKEMATSU,<br>Plaintiff,<br>v.<br>TAKEDA PHARMACEUTICALS U.S.A., INC.,<br>Defendant. | No. 22-cv-6650<br><br>**OPINION & ORDER** |

**CECCHI, District Judge**.

Before the Court is defendant Takeda Pharmaceuticals U.S.A., Inc.'s ("Takeda" or "Defendant") motion for summary judgment, ECF No. 64; *see* ECF No. 65 ("Def.'s MSJ Br."), and plaintiff Melinda Day Takematsu's ("Plaintiff") cross-motion for partial summary judgment, ECF No. 67; *see* ECF No. 68 ("Pl.'s Opp'n & Cross-MSJ Br."). Takeda opposed Plaintiff's cross-motion and replied in further support of its motion, ECF No. 71 ("Def.'s Opp'n & Reply Br."), and Plaintiff filed a reply in support of her cross-motion, ECF No. 73 ("Pl.'s Reply Br."). The Court decides the motions without oral argument. Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court will grant in part and deny in part Takeda's motion for summary judgment and deny Plaintiff's cross-motion for summary judgment.

## I. BACKGROUND[1]

This matter arises out of Plaintiff's employment at Takeda, a large pharmaceutical company, and concerns Takeda's alleged failure to administer Plaintiff's disability accommodations and subsequent transfer of Plaintiff to another role.

---

[1] Background facts come from the pleadings, evidence, the parties' statements of undisputed material facts pursuant to Local Civil Rule 56.1, the parties' counterstatements thereto, and the parties' replies to those counterstatements. *See* ECF Nos. 66 ("Def.'s SMF"), 69 ("Pl.'s SMF"),

**A. Plaintiff's Disability Accommodations**

Plaintiff began working for Takeda in 2018, when Takeda merged with Plaintiff's previous employer. Pl.'s SMF ¶ 4. Prior to the merger, Plaintiff was an associate director of sales, *id.* ¶ 3, and shortly after the merger, Takeda elevated her to Senior Regional Business Director ("SRBD") in charge of managing seven Northeast-based sales representatives in the area of Hereditary Angioedema, Def.'s SMF ¶¶ 5–6. As an SRBD, Plaintiff was "expected to lead, manage, provide observational coaching for, and develop the skills of" the sales representatives on her team. *Id.* ¶ 6. She was also responsible for developing and presenting business plans and reviews. ECF No. 65-7 ("Potilechio Dep.") at 50:16–22, 56:1–12; Def.'s SMF ¶ 15; Pl.'s CSMF ¶ 15; ECF No. 65-28 at 2.

In March 2018, Plaintiff began experiencing symptoms of her then-undiagnosed Multiple Sclerosis ("MS"), such as slurred speech, confusion, forgetting words, and dizziness—all of which were triggered and exacerbated by stressful situations. Def.'s SMF ¶ 11; Pl.'s SMF ¶ 8. Nonetheless, Plaintiff continued to work as an SRBD. For instance, in her 2019 performance review, Plaintiff's superiors noted that Plaintiff was "dedicated to" "elevating her existing skill set" and "continue[d] to make progress in her leadership journey." ECF No. 65-39 at 3; *see also* ECF No. 65-18; Pl.'s SMF ¶ 10 ("[A] fellow SRBD . . . note[d] [in a text message to Plaintiff] that . . . [she] was doing an 'outstanding job.'"). At the same time, despite a "strong" fourth quarter, Plaintiff's sales team ranked last for the 2019 performance year, Def.'s SMF ¶ 30; Pl.'s SMF ¶ 11, and her supervisors commented that Plaintiff needed to "[c]ontinue [her] transition from

70 ("Pl.'s CSMF"), 71-4 ("Def.'s Reply to Pl.'s CSMF"), 72 ("Def.'s CSMF"), 73-1 ("Pl.'s Reply to Def.'s CSMF").

[an] [i]ndividual [c]ontributor" to a "leader" and "lack[ed] confidence in . . . presenting [and] recruiting," ECF No. 65-39 at 2–3; *see* ECF No. 65-18 at 2–3; Def.'s SMF ¶¶ 30–34.

In September 2020, Plaintiff was diagnosed with MS and began a course of treatment. Pl.'s SMF ¶ 9. Plaintiff informed Manny Gaspar ("Gaspar"), her then-manager and head of sales for Plaintiff's division, and several other colleagues of her diagnosis. Def.'s SMF ¶¶ 8, 11. Initially, Plaintiff continued in her SRBD role full-time during treatment, and her sales team ranked second (out of five) in terms of total sales for fiscal year 2020. Pl.'s SMF ¶¶ 10–11; Def.'s CSMF ¶ 11. However, on January 24, 2021, Plaintiff began short-term disability leave to "take . . . time to focus on [her] health and to focus on living [her] new normal." ECF No. 65-3 ("Takematsu Dep.") at 94:1–8; *see* Pl.'s SMF ¶ 12; Def.'s CSMF ¶ 12. During her leave, Plaintiff continued to experience "dizziness, fatigue, slurring of her words, confusion[,] . . . memory issues," and balance issues. Pl.'s SMF ¶ 13.

On April 5, 2021, with the end of her leave approaching, Plaintiff obtained a letter from her psychologists at New York University. Def.'s SMF ¶ 13; *see also* Takematsu Dep. at 97:7–99:6. In the letter (the "NYU Letter"), Plaintiff's psychologists made several "clinical[] recommend[ations]" related to her return to work, including: (i) "advanced and extended preparation time for presentations" and "plan documents" (the "Advance Preparation Accommodation"), (ii) "previews [of] expected questions" in advance of presentations, as well as "extended and advanced review" of those questions (the "Question Preview Accommodation"), (iii) "additional reviews with management" to ensure her understanding of work assignments (the "Management Review Accommodation"), and (iv) the use of assists (*e.g.*, cue cards, scripts) during presentations (the "Presentation Assists Accommodation") (collectively, the "Approved

Accommodations").[2] ECF No. 65-10; *see* Pl.'s SMF ¶ 14; Def.'s SMF ¶ 13. Plaintiff submitted the NYU Letter to Takeda, requesting that it approve her psychologists' recommendations as disability accommodations upon her return to work. Pl.'s SMF ¶ 14. After a conversation between human resources partner Susan Potilechio ("Potilechio") and Plaintiff, as well as discussions between Takeda's human resources staff and Gaspar related to the feasibility of certain accommodations, Takeda and Plaintiff agreed to the Approved Accommodations. *Id.* ¶¶ 15–16; Def.'s SMF ¶¶ 14–16. In addition, Plaintiff states that she requested and Takeda approved one additional accommodation not listed in the NYU Letter: the opportunity to make presentations to her manager prior to presenting live in front of a group (the "Mock Presentation Accommodation"). Pl.'s SMF ¶ 16. As discussed further below, Takeda disputes Plaintiff's account and there is conflicting evidence on this point. *Compare, e.g.*, *id.*, *with* Def.'s CSMF ¶ 16.

Plaintiff returned to work on April 18, 2021, with Gaspar aware of her Approved Accommodations. Def.'s SMF ¶¶ 12, 15; ECF No. 65-5 ("Gaspar Dep.") at 29:18–36:20. Initially, Takeda generally complied with the Approved Accommodations. For instance, Gaspar met with Plaintiff weekly, whereas he met with other SRBDs every other week. Def.'s SMF ¶ 15; Pl.'s CSMF ¶ 15. He also set aside additional time to review Plaintiff's quarterly business reviews with

[2] The NYU Letter contained three additional suggestions: the "gradual resumption of work duties," "built-in opportunities for breaks," and the ability to sit as needed to avoid extended periods of standing. ECF No. 65-10. The parties agree that Plaintiff dropped her request to gradually resume her work duties. *See* Pl.'s SMF ¶ 16; Def.'s CSMF ¶ 16. Moreover, Plaintiff concedes that the "built-in opportunities for breaks" and ability to sit recommendations are immaterial to the parties' motions. Pl.'s Reply Br. at 7 n.3. Finally, Takeda granted Plaintiff's request for a remote work accommodation (the "Remote Work Accommodation") on August 31, 2021, for three months due to the COVID-19 pandemic. Def.'s SMF ¶ 16. Takeda renewed the Remote Work Accommodation in "three-month increments" through April 2022. *Id.* ¶ 17; *see also* Pl.'s Reply Br. at 7 n.3.

Plaintiff and at least once previewed questions for Plaintiff before a presentation. Def.'s SMF ¶ 15; Pl.'s CSMF ¶ 15.

However, Plaintiff's superiors also made two comments related to Plaintiff's presentation style that Plaintiff characterizes as critical of her Presentation Assists Accommodation. First, after Plaintiff's presentation of her July 2021 business plan, Gaspar told Plaintiff that she "sounded like [she] was reading" and suggested that she "work[] on ways to present more natural[ly] and [allow her] personality [to] come" through. Def.'s CSMF ¶ 17; Def.'s SMF ¶ 35; Pl.'s CSMF ¶ 35; *see also* Gaspar Dep. at 57:7–61:16. Second, in August 2021, Tony Melo ("Melo"), Gaspar's manager and the chief of Plaintiff's division, asked Plaintiff, "Why do you read [during presentations]? You have such a good personality." Takematsu Dep. at 105:18–106:22; *see also* ECF No. 65-6 ("Melo Dep.") at 105:1–25; Def.'s CSMF ¶ 17; Def.'s SMF ¶ 10.

In November 2021, Christopher Wilson ("Wilson") became Plaintiff's manager. Def.'s SMF ¶ 37; Pl.'s SMF ¶ 18. Around the time of this transition, Potilechio—the employee in charge of managing accommodations across Takeda's "U.S. Business unit"—left the company. Pl.'s SMF ¶¶ 19–20. However, no one at Takeda informed Potilechio's replacement, Irving Forestier ("Forestier"), of Plaintiff's accommodations. *Id.* (also noting that Forestier did not become aware of Plaintiff's accommodations until April 11, 2022). As a result, Wilson—Plaintiff's new manager—was not informed of Plaintiff's accommodations. Pl.'s SMF ¶¶ 18–20; Def.'s CSMF ¶ 20; *see also* Def.'s SMF ¶¶ 19, 22, 26.

Plaintiff contends that Takeda failed to administer her accommodations once Wilson took over as her manager, and there is evidence to support Plaintiff's position. *See* Pl.'s SMF ¶ 21. For instance, Wilson noted in April 2022 that he had "scheduled and conducted the same cadence of [one-on-one] calls with" Plaintiff "*as with the rest of [his] team* (bi-weekly)." ECF No. 65-24 at

3 (emphasis added). However, Plaintiff states that, pursuant to the Management Review Accommodation, she expected to check in with her manager more frequently than other SRBDs. Pl.'s SMF ¶ 21; *see* ECF No. 65-10; Def.'s SMF ¶ 15; Pl.'s SMF ¶ 14. That said, Takeda cites evidence that Plaintiff may not have expected Takeda to fulfill this accommodation at all times. *See, e.g.*, ECF No. 65-15 at 5 ("Interactive Process Notes" stating that "[i]f I [*i.e.*, Plaintiff] have a presentation due[,] [i]t would be good for my manager to meet with me once a week before a presentation. *Other than that[,] every other week is fine*." (emphasis added)); *see also* Takematsu Dep. at 163:11–164:19.

In addition, Takeda tasked Plaintiff with presenting twice at an internal meeting in Savannah, Georgia in early 2022 (the "Savannah Meeting"). Pl.'s SMF ¶ 22; Def.'s CSMF ¶ 22; Def.'s SMF ¶ 23. Although Wilson "sp[oke] to Plaintiff about her presentation in advance," Pl.'s CSMF ¶ 23, Plaintiff was given "two to four weeks to prepare," which did not provide for additional time beyond what was provided to other SRBDs,[3] ECF No. 65-9 ("Wilson Dep.") at 77:5–21; *see also* Takematsu Dep. at 113:2–20. Moreover, Plaintiff's declaration in this litigation states that the Question Preview Accommodation was not satisfied ahead of the Savannah Meeting, ECF No. 68-9 ("Takematsu Decl.") ¶ 13, though there is some conflicting evidence on this point, *see* Wilson Dep. at 79:4–80:12; *see also* Def.'s Opp'n & Reply Br. at 11–12 (noting this dispute

[3] In its briefing, Takeda suggests that the Advance Preparation Accommodation only required it to give Plaintiff adequate time to prepare, not additional time relative to her SRBD peers. Def.'s Opp'n & Reply Br. at 11; *see* Def.'s CSMF ¶ 21 (Takeda stating that the NYU Letter did not explicitly "recommend [Plaintiff] having more time than her peers."; citing ECF No. 65-15 at 4). In response, Plaintiff states that the Advance Preparation Accommodation required Takeda to provide her with additional time relative to her peers. Pl.'s Reply Br. at 8 n.4 ("If Plaintiff was given the same amount of reviews and the same amount of time that Defendant normally provided to her SRBD peers, then she would not be provided 'additional' anything."); *see* Pl.'s SMF ¶ 21 (Plaintiff stating that "Wilson also provided Plaintiff with the same amount of lead time within which to prepare for her presentations as her peers and did not provide her with additional time."); ECF No. 65-10; Takematsu Dep. at 103:2–11.

and citing Def.'s SMF ¶ 21 and Pl.'s SMF ¶ 22). And finally, Plaintiff states in her declaration that Wilson never fulfilled the Mock Presentation Accommodation, Pl.'s SMF ¶ 21 (citing Takematsu Decl. ¶ 13), but as noted above and discussed further below, Takeda disputes that it ever approved this accommodation.

This disconnect led Plaintiff to confront Wilson in early to mid-April 2022 about what she perceived to be Takeda's failure to satisfy her accommodations. *See, e.g.*, Pl.'s SMF ¶¶ 23–26. For example, in an email to Wilson on April 4, 2022, Plaintiff attached the NYU Letter and stated, "You may have already been made aware but I feel it is important you have my accommodations." *Id.* ¶ 23. Plaintiff emailed Wilson again ten days later, stating that "in order for [him] to work with [her] on the accommodations, [he] . . . need[ed] to" be aware of them. *Id.* ¶ 26. Wilson did not engage with Plaintiff based on his view that he was "not at liberty to discuss anything medical-related." Def.'s CSMF ¶ 24; *see also* Pl.'s SMF ¶ 26; Def.'s SMF ¶ 26. Instead, Wilson referred Plaintiff to human resources and forwarded Plaintiff's initial email to Forestier and other human resources personnel. Pl.'s SMF ¶¶ 27–28. Wilson—then still unaware of Plaintiff's accommodations—stated that he thought that Plaintiff was making a new accommodation request, which he would have been unable to handle under Takeda's accommodation policies. Def.'s SMF ¶¶ 24–26; Pl.'s SMF ¶ 28 ("Wilson eventually responded to say 'it's not that I don't want to know about accommodation out of indifference but out of protection of your privacy.'"); ECF No. 65-1 ¶ 3.

### B. Takeda's Investigation of Workplace Complaints Against Plaintiff

In March 2022, almost a year after Takeda and Plaintiff agreed to the Approved Accommodations, several employees accused Plaintiff of inappropriate conduct. Def.'s SMF ¶ 42. Specifically, a sales representative on Plaintiff's team ("Complainant I") accused Plaintiff of

> sexually harass[ing] [Complainant I], foster[ing] a hostile work environment, bully[ing] and intimidat[ing] [Complainant I], engag[ing] in unprofessional behavior such as swearing and yelling, instruct[ing] [Complainant I] to use inappropriate and aggressive sales tactics to obtain [sales], and ask[ing] [Complainant I] to call her and keep her on the phone but concealed in his pocket so that she could eavesdrop on his meetings with healthcare providers without their knowledge.

Def.'s SMF ¶ 43. Another sales representative on Plaintiff's team ("Complainant II") accused Plaintiff of

> engag[ing] in unprofessional behavior, including erratic swearing and yelling, instruct[ing] Complainant II to use inappropriately aggressive sales tactics, and [similarly, as with Claimant I] ask[ing] Complainant II to call her and keep her on the phone but concealed in her pocket so that [Plaintiff] could eavesdrop on . . . meetings with healthcare providers without their knowledge.

*Id.* ¶ 44. In addition, an anonymous caller to Takeda's internal employee hotline alleged that Plaintiff engaged in compliance violations. *Id.* ¶ 45.

In response, Forestier and Margaret Ives ("Ives") from Takeda's ethics department launched an investigation into Plaintiff's conduct. *Id.* ¶ 46. They interviewed twenty witnesses, including Plaintiff, Wilson, Melo, Complainant I, Complainant II, and others on Plaintiff's sales team. *Id.*; *see generally* ECF No. 65-32. Ultimately, Forestier concluded that the allegations of "sexual harassment," "hostile work environment," and "intimidation/bullying" were "unsubstantiated." ECF No. 65-32 at 6; *see* Def.'s SMF ¶ 51.

However, Forestier also concluded that there was "reasonable evidence to [find] that" Plaintiff violated Takeda's "general harassment . . . [p]olicy." ECF No. 65-32 at 6. Specifically, Forestier found (i) that Plaintiff "regularly display[ed] inappropriate behavior towards her team," including "cursing (not at employees) . . . , screaming/yelling ([at] at least two employees), outbursts and unnecessary pressure to produce start forms (sales)"; (ii) "a consensus among the majority" of Plaintiff's team that "her management skills, workplace behavior and leadership [were] inefficient, unpredictable, [and] inappropriate"; and (iii) that Plaintiff engaged in

"aggressive and questionable sales" tactics. *Id.* at 4–7; *see* Def.'s SMF ¶ 52; *see also id.* ¶ 56 ("Forestier determined [Plaintiff] . . . lacked 'professionalism, capacity for leadership[,] and general business acumen.'"). Moreover, he concluded that Plaintiff instructed sales representatives "to activate a concealed telephone so she could listen in on the sales representatives' conversations with health care provider[s] without [their] consent." *Id.* ¶ 54 (first alteration in original). Forestier also determined that, during the course of the investigation, Plaintiff retaliated against Complainant I, inappropriately revealed sensitive information about Complainant II's family, and lied in her interview with Forestier and Ives. *Id.* ¶¶ 53–55; *see also id.* ¶¶ 48–49. Given these findings, on April 19, 2022, Forestier recommended that Takeda either fire Plaintiff or transfer her with a "final warning." *Id.* ¶ 57; *see* ECF No. 65-32 at 2–9.

**C. Plaintiff's Transfer and Subsequent Disability Leave**

Based on the investigative findings, Melo, the chief of Plaintiff's division—after consulting with (i) Wilson, (ii) a human resources leader at Takeda, and (iii) his supervisor at the time—concluded on April 20, 2022, that Plaintiff was not fit to be a manager and that a transfer was appropriate. Pl.'s SMF ¶ 30; Def.'s CSMF ¶ 30; Def.'s SMF ¶¶ 10, 16, 59; Pl.'s CSMF ¶ 59; Melo Dep. at 31:14–16. On April 28, 2022, Plaintiff was transferred to a new "project-focused" marketing role that did "not involve people management or require face-to-face interaction." ECF No. 68-15 at 2–3; *see* Pl.'s SMF ¶ 30. The next day, Plaintiff told Takeda that she would not be moving forward with the new role. Pl.'s SMF ¶ 31. Instead, Plaintiff—whose last active day of work was April 30, 2022—began short-term disability leave and then transitioned to long-term disability leave in October 2022. *Id.* ¶ 31; Def.'s SMF ¶¶ 27–29. Had Plaintiff assumed the new role, her salary and long-term incentive plan target would not have changed; however, her "bonus

eligibility" would have, and she "would have lost her company car because she was no longer supervising field sales." Def.'s SMF ¶ 60.

### D. Procedural History

After receiving a notice of her right to sue from the Equal Employment Opportunity Commission, Plaintiff filed her complaint on November 16, 2022. *See* ECF No. 1 ("Compl.") ¶¶ 5–9; ECF No. 9 ¶¶ 5–9. Takeda answered the following month. ECF No. 9. After discovery, the parties filed their summary judgment motions. ECF Nos. 64, 67.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case.'" *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (citation omitted); *see SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 203–04 (3d Cir. 2022). "In considering a motion for summary judgment, a district court may not make credibility determinations or . . . weigh[] . . . the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citation omitted); *see also Morgan v. Allison Crane & Rigging LLC*, 114 F.4th 214, 220 (3d Cir. 2024) ("[W]e deny summary judgment if there is enough evidence for a jury to reasonably find for the nonmoving party." (citation omitted)).

The standard by which a district court decides a summary judgment motion does not change when the parties file cross-motions. *See Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016). When ruling on cross-motions for summary judgment, a district

court must consider the motions independently and view the evidence on each motion in the light most favorable to the party opposing the motion. *See id.*

## III. DISCUSSION

Plaintiff brings several disability discrimination claims under both the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, (the "ADA"), and New Jersey's Law Against Discrimination, N.J. Stat. Ann. § 10:5-1, *et seq.*, (the "NJLAD"). *See* Compl. ¶¶ 45–67. Because "[d]isability discrimination claims under the ADA and the NJLAD are analyzed under the same framework," the Court will evaluate them in tandem. *Marsh v. GGB, LLC*, 455 F. Supp. 3d 113, 123–24 (D.N.J. 2020) (citation omitted); *see also Armstong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 n.12 (3d Cir. 2006); Def.'s MSJ Br. at 15 n.3; Pl.'s Opp'n & Cross-MSJ Br. at 20.

To establish a prima facie claim of disability discrimination, Plaintiff must show that she (i) is disabled, (ii) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations, and (iii) has suffered an adverse employment action because of her disability. *See Fowler v. AT & T, Inc.*, 19 F.4th 292, 299, 299 n.3, 303 (3d Cir. 2021). Takeda does not appear to contest either of the first two factors. Instead, the parties' arguments focus on whether Plaintiff suffered an adverse employment action because of her disability. *See MacDougall v. Rhuling*, No. 24-989, 2024 WL 3993213, at *5 (E.D. Pa. Aug. 28, 2024) ("[A]n adverse employment action means . . . that the employee suffered 'some harm' to a term or condition of employment," *i.e.*, "that the employer treated the employee 'worse' because of a protected characteristic." (citation omitted)).

Plaintiff argues that she suffered three adverse employment actions.[4] *See* Compl. ¶¶ 45–67; *see also* Def.'s MSJ Br. at 14, 21–22; Pl.'s Opp'n & Cross-MSJ Br. at 19, 26, 30. First, she claims that Takeda failed to reasonably accommodate her disability by failing to actually implement her accommodations ("Failure to Accommodate Claims").[5] Pl.'s Opp'n & Cross-MSJ Br. at 19–26. Second, she claims that Takeda transferred her from her SRBD role because of her disability ("Transfer Claims"). Pl.'s Opp'n & Cross-MSJ Br. at 30–40. Third, Plaintiff claims that Takeda constructively discharged her by failing to implement her accommodations, transferring her to a new role, and creating other "unpleasant [and] difficult" conditions ("Constructive Discharge Claims"). Pl.'s Opp'n & Cross-MSJ Br. at 26–30. While Plaintiff's Transfer and Constructive Discharge Claims are subject to the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework, her Failure to Accommodate Claims are not. *See Russo v. Bryn Mawr Tr. Co.*, No. 22-3235, 2024 WL 3738643, at *4 (3d Cir. Aug. 9, 2024); *Lavia v. Pa. Dep't of Corrs.*, 224 F.3d 190, 199 n.8 (3d Cir. 2000); *Reyer v. Saint Francis Country House*, 243 F. Supp. 3d 573, 591, 595 (E.D. Pa. 2017).

---

[4] Plaintiff's complaint alleges one additional adverse employment action: retaliation. Compl. ¶¶ 52, 63. However, Plaintiff did not address retaliation in her briefing. Def.'s Opp'n & Reply Br. at 1 n.2; *see also* Def.'s MSJ Br. at 22–40; Pl.'s Opp'n & Cross-MSJ Br.; Pl.'s Reply Br. Therefore, Plaintiff has abandoned her retaliation claims. *See Campbell v. Jefferson Univ. Physicians*, 22 F. Supp. 3d 478, 487 (E.D. Pa. 2014) ("[W]hen a plaintiff responds to a defendant's summary judgment motion but fails to address the substance of any challenge to particular claims, that failure 'constitutes an abandonment of th[o]se causes of action and essentially acts as a waiver of these issues.'" (second alteration in original) (citation omitted)).

[5] The Third Circuit has stated that "a claim stemming from an employer's failure to accommodate an employee's disabilities may be viewed simply as a type of discrimination claim, where the relevant adverse employment action is the employer's 'refus[al] to make reasonable accommodations for a[n employee's] disabilities.'" *Fowler*, 19 F.4th at 306 (alterations in original) (quoting *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 504 (3d Cir. 2010)); *see also, e.g.*, *Galette v. Avenue 365 Lending Serv. LLC*, No. 24-1221, 2025 WL 429973, at *4 (3d Cir. Feb. 7, 2025); *Voigt v. Fluor Marine Propulsion, LLC*, No. 21-378, 2024 WL 555088, at * 7 (W.D. Pa. Feb. 12, 2024).

Takeda moves for summary judgment on all of Plaintiff's claims, ECF No. 64-1, whereas Plaintiff moves for summary judgment only on her Failure to Accommodate Claims, ECF No. 67-1 at 2. The Court will address each theory of liability in turn.

### A. Neither Party Is Entitled to Summary Judgment on Plaintiff's Failure to Accommodate Claims

An employer must make "reasonable accommodations to the known physical or mental limitations of [an] individual[,] unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (third and fourth alterations in original) (citation omitted); *see Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 611 n.4 (3d Cir. 2006). An "employer can breach this duty by failing to provide an accommodation that is reasonable or by failing to engage in a good faith interactive process to identify [reasonable] accommodations." *Lewis v. Univ. of Pa.*, 779 F. App'x 920, 923 (3d Cir. 2019). A "reasonable accommodation" is an accommodation that allows the disabled employee in question to perform the essential functions of the job in question without modifying the job's essential character. *See Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 283–84 (3d Cir. 2001); *Spratley v. KidsPeace Corp.*, No. 22-2411, 2023 WL 3007933, at *13 (E.D. Pa. Apr. 19, 2023).

Here, the Court finds a genuine dispute of material fact that prevents a grant of summary judgment for either party. *See Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008) ("On cross-motions for summary judgment, the court construes facts and draws inferences 'in favor of the party against whom the motion under consideration is made.'" (citation omitted)). Specifically, a trial is needed to determine the extent to which Takeda complied with Plaintiff's accommodations, in particular during Wilson's tenure as Plaintiff's manager. This dispute consists of at least three interrelated sub-disputes, which the Court will address in turn.

First, a reasonable jury could find in either direction on the issue of whether Plaintiff's Approved Accommodations also included the Mock Presentation Accommodation, *i.e.*, "the opportunity to make her presentations to her manager ahead of time prior to presenting in front of a group." Pl.'s SMF ¶ 16; *see* Def.'s CSMF ¶ 16; Def.'s Opp'n & Reply Br. at 10 n.9. For instance, an April 6, 2021, email from a Takeda human resource employee to Gaspar states, "[Plaintiff] can return to work on 4/19/21 with the following accommodations," and does not list the Mock Presentation Accommodation. ECF No. 65-26 at 2; *see also* ECF No. 65-15 at 4 ("Interactive Process Notes" from April 2022 listing "Reasonable Accommodation Request[s]," but not listing the Mock Presentation Request). In addition, the NYU Letter makes no mention of the Mock Presentation Accommodation. ECF No. 65-10. And in her deposition, Plaintiff did not explicitly mention the Mock Presentation Accommodation. *See, e.g.*, Takematsu Dep. at 102:19–103:15.

However, Plaintiff's declaration states that "[p]rior to my return to work, I requested, and Defendant approved, an accommodation for my MS-related disabilities which would permit me to make my presentations to my manager ahead of time, prior to presenting in front of a group." Takematsu Decl. ¶ 12. In addition, Potilechio testified that, based on her contemporaneous handwritten notes of a meeting she had with Plaintiff on April 13, 2021, Plaintiff "ask[ed] to present [Business Plans] to [Gapsar] first before being in front of a group." Potilechio Dep. at 45:17–21, 54:13–18; *see also* ECF 68-5 (Potilechio's notes from the April 13, 2021, call). According to Potilechio, Plaintiff requested that accommodation because "she had difficulty with slurring her words and losing her train of thought." Potilechio Dep. at 56:23–57:6. Potilechio further testified that Gaspar assented to that request when human resources asked about the feasibility of Plaintiff's requested accommodations. *Id.* at 55:3–5. As such, this factual dispute

remains unresolved. And this factual dispute is critical, because it bears directly on the extent to which Takeda complied with the Approved Accommodations.[6]

Second, a reasonable jury could find for either party on the issue of whether Wilson satisfied the Question Preview Accommodation ahead of the Savannah Meeting. For example, Plaintiff states in her declaration that the Question Preview Accommodation was not satisfied ahead of the Savannah Meeting. Takematsu Decl. ¶ 13. However, Wilson testified that he generally always provided "anticipated questions" ahead of business plan meetings, and one of Plaintiff's presentations at the Savannah Meeting involved a business plan. Wilson Dep. at 79:9–80:12; *see also* Def.'s Opp'n & Reply Br. at 11–12 (noting this issue of fact).

Third, a reasonable jury could find in favor of either side on the issue of whether Wilson satisfied the Management Review Accommodation during his tenure as Plaintiff's manager. For instance, Plaintiff states that, pursuant to the Management Review Accommodation, she expected to check in with her manager more frequently than other SRBDs, Pl.'s SMF ¶ 21; *see also* ECF No. 65-10 ("It is also recommended that she be provided with additional reviews with management to ensure understanding of any tasks being requested for her to complete."), and there is evidence that Wilson checked in with Plaintiff on the "same cadence . . . as with the rest of [his] team (bi-weekly)." ECF No. 65-24 at 3. Yet Plaintiff told Takeda human resources staff in the spring of

[6] Relevant here, Takeda cites *Annenberg v. Clark County School District*, 818 F. App'x 674 (9th Cir. 2020), for the proposition that "[t]he fact that [a defendant] failed to provide a particular accommodation . . . does not mean that [defendant] did not provide a reasonable accommodation. To prove a violation of the ADA, [plaintiff] must show that the accommodation that was actually provided was unreasonable." Def.'s Opp'n & Reply Br. at 12 (quoting *Annenberg*, 818 F. App'x at 676). But the record here is very different from the record developed before the district court in *Annenberg*. For example, the district court in *Annenberg* did not "reach th[e] question [of the exact parameters of plaintiff's accommodation] because [plaintiff] fail[ed] to show that her accommodation was not honored, *regardless of its actual parameters*." *Annenberg v. Clark Cnty. Sch. Dist.*, No. 17-3090, 2019 WL 13249693, at *5 n.67 (D. Nev. May 2, 2019) (emphasis added), *aff'd*, 818 F. App'x 674 (9th Cir. 2020). That is not the case here.

2022 that bi-weekly check-ins with her manager were fine so long as she was able to meet with him "once a week" in the lead-up to presentations. ECF No. 65-15 at 5. From this, a reasonable jury could find that Plaintiff sanctioned at least some of the lapses in Wilson's implementation of the Management Review Accommodation.

Together, these disputes leave an unresolved genuine issue of material fact concerning the extent to which Takeda complied with Plaintiff's approved accommodations. *See, e.g.*, *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 755–56 (11th Cir. 2023) (finding a "genuine issue of material fact" on a failure to accommodate claim where plaintiff "repeatedly requested, and [defendant] repeatedly failed to provide," certain accommodations); *Fitzgerald v. Freightliner of Ariz. LLC*, No. 17-4601, 2019 WL 5579595, at *6 (D. Ariz. Oct. 29, 2019) ("Whether Defendant reasonably accommodated Plaintiff within the meaning of the ADA, despite its failure to always honor the noon lunchtime or provide a warehouse staff member to pull certain parts for Plaintiff, is mired in questions of fact."); *O'Toole v. Ulster Cnty.*, No. 12-1228, 2014 WL 4900776, at *9 (N.D.N.Y. Sept. 30, 2014) (finding "a genuine dispute as to whether Defendant refused to reasonably accommodate Plaintiff's disability" because "a rational factfinder could determine that the . . . inadequacy of Defendant's apparent compliance with Plaintiff's workstation request was not truly an 'accommodation'"); *U.S. E.E.O.C. v. Rite Aid Corp.*, 750 F. Supp. 2d 564, 571 (D. Md. 2010) (denying defendant's motion for summary judgment on plaintiff's failure to accommodate claim where there was a dispute as to whether defendant employer ultimately provided plaintiff with a certain "reasonable accommodation"); *Todd v. Brownlee*, No. 05-81, 2006 WL 617960, at *5 (D. Haw. Mar. 9, 2006) (finding a genuine dispute of material fact on an ADA claim where, as here, there was conflicting evidence on plaintiff's accommodations and the degree to which defendant complied with those accommodations). As such, the Court cannot grant

summary judgment to either party on Plaintiff's Failure to Accommodate Claims.[7] *See Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991) ("[S]ummary judgment is inappropriate when a conflict on a material fact is present in the record."); *18W Holdings, Inc. v. Sing for Serv., LLC*, 763 F. Supp. 3d 651, 661–63 (D.N.J. 2025).

**B. Takeda Is Not Entitled to Summary Judgment on Plaintiff's Transfer Claims**

An employer can be liable for disability discrimination if it transfers an employee to a new position because of his disability. *See Wilkie v. Luzerne Cnty.*, 207 F. Supp. 3d 433, 438 (M.D. Pa. 2016); *A.D.P. v. ExxonMobil Rsch. & Eng'g Co.*, 54 A.3d 813, 821 (N.J. Super. Ct. App. Div. 2012). This type of claim is analyzed under the *McDonnell Douglas* burden-shifting framework. *Hatch v. Franklin Cnty.*, 755 F. App'x 194, 198–200 (3d Cir. 2018); *ExxonMobil*, 54 A.3d at 821.

[7] Takeda also argues that "an employer's imperfect provision of an accommodation is not a failure to accommodate so long as the employer acted reasonably and in good faith." Def.'s Opp'n & Reply Br. at 14. An employer's good faith is relevant in cases where an employer allegedly failed to engage in the interactive process. *See, e.g.*, *Whelan v. Teledyne Metalworking Prods.*, 226 F. App'x 141, 144 (3d Cir. 2007); *Taylor*, 184 F.3d at 317 ("All the interactive process requires is that employers make a good-faith effort to seek accommodations."). An employer's good faith is also relevant where there is a delay in the implementation of approved accommodations. *See, e.g.*, *Frost v. City of Phila.*, 839 F. App'x 752, 757 (3d Cir. 2021) (holding that defendant worked in good faith to "accommodate [plaintiff's] needs" where "officials . . . measured and fitted [plaintiff] for [the] coat and boots [he requested] and was in the process of creating special steering devices for his use on vehicles [that he requested]" when he was terminated); *Jay v. Intermet Wagner Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000) ("While unreasonable delay in providing an accommodation can provide evidence of discrimination, we believe that Wagner acted reasonably and in good faith."); *Heard v. J & G Spas, LLC*, No. 22-3212, 2024 WL 1511901, at *13 (E.D. Pa. Apr. 8, 2024). However, Plaintiff makes clear that her Failure to Accommodate Claims do not center on the interactive process and points out that this is not a "'delay' case." Pl.'s Reply Br. at 11; *see* Pl.'s Opp'n & Cross-MSJ Br. at 23. And on good faith more generally, the Court notes that Wilson, as Plaintiff's manager, was unaware of Plaintiff's accommodations through her last active month of work, likely because "Forestier[—]despite being responsible for the process of managing Plaintiff's accommodation—was [himself] not aware of the Approved . . . Accommodations until April 11, 2022." Pl.'s SMF ¶¶ 19–20, 26, 28; Def.'s SMF ¶¶ 19, 22–26; *see Taylor*, 184 F.3d at 318 ("[W]here there is a genuine dispute about whether the employer acted in good faith, summary judgment will typically be precluded.").

Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case. *See Hatch*, 755 F. App'x at 198. Then, the burden shifts to the defendant to "produce a legitimate, non-discriminatory reason for the adverse employment action." *Id.* "If the defendant makes such a showing, the burden then shifts back to the plaintiff to demonstrate that the defendant's purported reason was really pretext for discrimination." *Id.*; *see also Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) ("[T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" (second alternation in original) (citation omitted)).

Here, the Court cannot grant summary judgment in Takeda's favor, because there are genuine disputes of material fact, *i.e.*, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Pignataro v. Port Auth. of N.Y. & N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) ("After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party."); *Specht v. Suarez*, 798 F. Supp. 3d 485, 500, 502 (D.N.J. 2025) (denying defendant's summary judgment motion where there were two "way[s] [of] see[ing] the evidence," one that favored plaintiff and one that favored defendant, "[a]nd that means the Plaintiff's . . . claim is for a jury to consider—not for the Court to take away, by granting summary judgment"). Those genuine disputes occur at steps one and three of the *McDonnell Douglas* framework, which the Court will address below.

**1. *McDonnell Douglas* Step One: Plaintiff's Prima Facie Case**

At step one, a reasonable jury could find that Plaintiff has met the "low bar" of establishing a prima facie case of disability discrimination based on her transfer. *Rice-Smith v. Misericordia*

*Convalescent Home*, No. 20-1473, 2022 WL 2231822, at *9 (M.D. Pa. June 21, 2022) (citation omitted); *see also Quick v. GEO Grp., Inc.*, No. 18-93, 2020 WL 532343, at *16 (W.D. Pa. Feb. 3, 2020) (noting that a prima facie ADA claim requires "a causal connection between [plaintiff's] disability and [the relevant] adverse employment action"). For instance, as discussed further below, Wilson and Melo both made statements to those investigating Plaintiff's misconduct that a reasonable jury could view as evidence of discriminatory animus towards Plaintiff's disability. Pl.'s CSMF ¶ 59; *see Briggs v. Temple Univ.*, 339 F. Supp. 3d 466, 493 (E.D. Pa. 2018) (noting that "[t]he prima facie case and pretext inquiries [of *McDonnell Douglas*] often overlap"). In addition, Takeda notes that Plaintiff "raised her accommodations to Wilson on April 4, 2022," and that "Melo decided to transfer her on April 20, 2022." Def.'s MSJ Br. at 29. A reasonable jury could find that sixteen-day period to be "unusually suggestive" of discriminatory intent. *Coleman v. Childs.' Hosp. of Phila.*, No. 22-1445, 2023 WL 7412923, at *6 (E.D. Pa. Nov. 8, 2023) (citation omitted) (noting that the Third Circuit has not established any bright-line rule for unusually suggestive temporal proximity), *aff'd*, No. 23-3064, 2024 WL 4490602 (3d Cir. Oct. 15, 2024); *see Smondrowski v. Edgewood Co., Inc.*, No. 24-1297, 2025 WL 3678885, at *4 (E.D. Pa. Dec. 18, 2025) (considering "temporal proximity" at the prima facie stage of an ADA discrimination claim (citation omitted)); *see also, e.g.*, *Parrish v. UPMC Univ. Health Ctr. of Pittsburgh*, 373 F. Supp. 3d 608, 636 (W.D. Pa. 2019) ("[S]ixteen days 'qualifies as unusually suggestive timing.'" (quoting *Pizzo v. Lindenwold Bd. of Educ.*, No. 13-3633, 2015 WL 1471943, at *13 (D.N.J. Mar. 31, 2015))).

Moreover, in at least one instance, Takeda investigated Wilson for misconduct but was arguably more lenient in disciplining Wilson (relative to Plaintiff). Pl.'s Opp'n & Cross-MSJ Br. at 32–35. Specifically, in 2021, Takeda investigated Wilson for allegedly speaking "unpleasantly"

to a member of his sales team. ECF No. 65-33 at 2–3. And although Takeda substantiated the allegations and found that Wilson's "actions violated Takeda's Global Code of Conduct," *id.* at 3, Takeda promoted Wilson after its investigation, whereas Takeda transferred Plaintiff, *see* ECF No. 65-4 ("Forestier Dep.") at 119:6-17; Def.'s SMF ¶ 59; Pl.'s CSMF ¶ 59. A reasonable jury could find this evidence similarly suggestive that Takeda transferred Plaintiff because of her disability. *See Rheem v. UPMC Pinnacle Hosps.*, No. 23-75, 2025 WL 3008146, at *5 (M.D. Pa. Oct. 27, 2025); *see also Ray v. Pinnacle Health Hosps., Inc*., 416 F. App'x 157, 164 (3d Cir. 2010) (noting that "one or two comparators may be sufficient at the prima facie stage"); *Irwin v. Fry Commc'ns, Inc.*, No. 21-186, 2021 WL 5756386, at *7 (M.D. Pa. Aug. 17, 2021) (explaining that comparator evidence is evaluated differently at steps one and three of *McDonnell Douglas* because "the specificity required at the prima facie stage is not as great as that required at the pretext stage"), *report and recommendation adopted*, No. 21-186, 2021 WL 5757335 (M.D. Pa. Sept. 11, 2021). Thus, construing the evidence in Plaintiff's favor, a reasonable jury could find that Plaintiff has satisfied her initial burden.

#### 2. *McDonnell Douglas* Step Three: Pretext

Plaintiff concedes that Takeda would succeed at step two, because the company "has provided a legitimate, non-discriminatory reason for Plaintiff's" transfer, Pl.'s Opp'n & Cross-MSJ Br. at 35, namely Takeda's investigation and accompanying findings that Plaintiff engaged in "misconduct" and performed poorly, Def.'s MSJ Br. at 33–24; *see Zielinski v. City of Wildwood*, No. 12-7195, 2014 WL 6991388, at *7 (D.N.J. Dec. 10, 2014) ("Case law supports the notion that an employee's violation of company policies constitutes a legitimate, nondiscriminatory reason for termination."). Nonetheless, at step three, a reasonable jury could find that Takeda's legitimate, non-discriminatory justification was pretextual. *See Connearney v. Main Line Hosp., Inc.*, No. 15-

2730, 2016 WL 6440371, at *5 (E.D. Pa. Oct. 28, 2016) ("Connearney can still show pretext by presenting evidence that the investigation was tainted by a party who did in fact act with discriminatory animus." (citing *McKenna v. City of Phila.*, 649 F.3d 171, 179 (3d Cir. 2011))). For example, Plaintiff points to the following statement Melo gave to Ives during the investigation of Plaintiff (after Ives asked about issues related to Plaintiff's performance): "Last summer she had a review. There was a one on one with her in Hartford. She was reading a script the whole way. See her last performance review. She was out on disability 3 months last fiscal year so, consider that too." Pl.'s Opp'n & Cross-MSJ Br. at 38 (quoting ECF No. 65-21 at 49). Plaintiff also identifies the following statement Wilson gave to Ives as a part of the investigation: "I said to her that her presentation lacked depth. [Plaintiff] doesn't like improvised conversations, she likes everything scripted, calls and meetings." *Id.* (quoting ECF No. 65-21 at 48).

A reasonable jury could find that these statements evince "discriminatory animus" of Plaintiff's disability. *Connearney*, 2016 WL 6440371, at *5; *see also Sinha v. Bradley Univ.*, 995 F.3d 568, 574–75 (7th Cir. 2021) ("Sinha must show that Radson actually harbored discriminatory animus and that his 'input was a proximate cause' of the adverse employment action." (citation omitted)). In addition, a reasonable jury could find that the investigators relied on these statements in making their relevant factual findings, because Melo and Wilson were high-ranking employees who had significant experience working with Plaintiff. *See McKenna*, 649 F.3d at 179. And finally, a reasonable jury could further infer pretext from the fact that Melo—who, as noted above, directed investigators to "consider that" Plaintiff was "out on disability 3 months last fiscal year," Pl.'s Opp'n & Cross-MSJ Br. at 38—bore ultimate responsibility for the decision to "transfer[] her to" a non-managerial role. Def.'s SMF ¶ 59; *see also* Forestier Dep. at 133:1–12. Therefore, construing the evidence in Plaintiff's favor, a reasonable jury could find that Takeda's

investigation was tainted and thus pretextual. *Iadimarco v. Runyon*, 190 F.3d 151, 166 (3d Cir. 1999) ("Where the plaintiff . . . offer[s] evidence that would allow reasonable minds to conclude that the evidence of pretext is more credible than the employer's justifications, the employer's motion for summary judgment must fail."); *see, e.g.*, *Knox v. PPG Indus., Inc.*, No. 15-1434, 2018 WL 1334828, at *4–6 (W.D. Pa. Mar. 15, 2018); *Mason v. Se. Pa. Transp. Auth.*, 134 F. Supp. 3d 868, 875–77 (E.D. Pa. 2015).

* * *

As such, Takeda is not entitled to summary judgment on Plaintiff's Transfer Claims. *See Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) ("[W]hen there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties." (alteration in original) (citation omitted)); *In re SoClean, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 22-152, 2025 WL 974258, at *11 (W.D. Pa. Mar. 20, 2025) ("If the evidence is such that a reasonable jury could draw different inferences from the basic facts on which the parties agree, summary judgment may not be granted, and the claim must proceed to trial.").

### C. Takeda Is Entitled to Summary Judgment on Plaintiff's Constructive Discharge Claims

An employer can be liable for disability discrimination if it constructively discharges an employee, *i.e.*, if an employer maintains "conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Colwell*, 602 F.3d at 502 (citation omitted). The Supreme Court has explained that a constructive discharge claim in the closely related Title VII context has two basic elements: a plaintiff must (i) prove that "he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign" and (ii) show that "he actually resigned." *Green v. Brennan*, 578 U.S. 547, 555 (2016).

Unsurprisingly, district courts in the Third Circuit as well as other courts of appeals have used *Brennan*'s constructive discharge standard in the ADA context. *See Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1079 n.5 (3d Cir. 1992) ("[T]he doctrine of constructive discharge is the same in all employee discrimination claims."); *see, e.g.*, *Powrzanas v. Jones Util. & Contracting Co.*, 834 F. App'x 500, 505 (11th Cir. 2020) (citing *Brennan*'s constructive discharge elements in the context of an ADA claim); *Vélez-Ramirez v. Puerto Rico ex rel. Sec'y of Just.*, 827 F.3d 154, 158 (1st Cir. 2016) (affirming a grant of summary judgment in favor of defendant employer on an ADA constructive discharge claim where plaintiff "conced[ed] that she did not resign"); *Pridgen v. Amazon.com Servs. LLC*, No. 25-7589, 2026 WL 735250, at *5 (D.N.J. Mar. 16, 2026); *Ingram v. Abington Sch. Dist. Auth.,* No. 24-174, 2025 WL 1839491, at *4 (E.D. Pa. July 3, 2025); *Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 705 n.36 (E.D. Pa. 2016), *clarified on denial of reconsideration*, No. 12-5567, 2016 WL 6135577 (E.D. Pa. Oct. 21, 2016), *aff'd*, 769 F. App'x 57 (3d Cir. 2019). And *Brennan*'s constructive discharge standard is consistent with New Jersey courts' approach to constructive discharge under the NJLAD. *See C.E.W. v. Borough of River Edge*, No. 1932-22, 2025 WL 2214205, at *7 (N.J. Super. Ct. App. Div. Aug. 5, 2025) ("[A] constructive discharge claim under the [NJ]LAD accrues when the employee gives notice of . . . resignation or retirement." (first alteration in original) (citation omitted)).

Here, Plaintiff has failed to establish a prima facie case of constructive discharge. In particular, Takeda correctly argues that Plaintiff's Constructive Discharge Claims fail because she "never resigned from her position." Def.'s Opp'n & Reply Br. at 16. It is undisputed that after her last active day of work on April 30, 2022, Plaintiff began short-term disability leave and transitioned to long-term disability leave in October 2022. *See* Def.'s SMF ¶¶ 27, 29; Pl.'s SMF ¶¶ 18, 31 (stating that Plaintiff went "on leave" after her transfer and has not returned to the

"workforce" since). But without evidence that she "actually resigned," Plaintiff's Constructive Discharge Claims fail as a matter of law. *Brennan*, 578 U.S. at 555; *see Ingram*, 2025 WL 1839491, at *4 (granting summary judgment for defendant on a disability discrimination constructive discharge claim where "[t]he undisputed facts of record establish[ed] that Plaintiff [was granted a leave of absence and] did not quit his job"); *Ballard v. AT&T Mobility, Inc.*, No. 15-8808, 2017 WL 3671313, at *11 (D.N.J. Aug. 25, 2017); *see also Knispel v. Haaland*, No. 21-3015, 2025 WL 306426, at *25 (D.S.D. Jan. 27, 2025); *Maron v. Legal Aid Soc'y*, 605 F. Supp. 3d 547, 570 (S.D.N.Y. 2022); *Alsbrook v. Int'l Paper Co.*, No. 19-673, 2021 WL 4482143, at *21 (S.D. Ala. Sept. 29, 2021); *Kheibari v. Rite Aid Corp.*, No. 14-11496, 2017 WL 4251758, at *4 (E.D. Mich. Sept. 26, 2017). Therefore, Takeda is entitled to summary judgment on Plaintiff's Constructive Discharge Claims. *See Mall Chevrolet, Inc. v. Gen. Motors LLC*, 99 F.4th 622, 630 (3d Cir. 2024) ("[A] moving party may . . . demonstrate that the nonmoving party has not made 'a showing sufficient to establish the existence of an element essential to that party's case . . . on which that party will bear the burden of proof at trial.'" (citation omitted)).

## IV. CONCLUSION

Accordingly, **IT IS** on this 29th day of July 2026;

**ORDERED** that Takeda's motion for summary judgment (ECF No. 64) is **GRANTED IN PART** and **DENIED IN PART**; and it is further

**ORDERED** that Plaintiff's cross-motion for partial summary judgment (ECF No. 67) is **DENIED**; and it is further

**ORDERED** that Plaintiff's Constructive Discharge Claims and claims under the ADA and NJLAD based on retaliation are **DISMISSED**; and it is finally

**ORDERED** that this Opinion and Order will be filed under temporary seal. It shall be unsealed unless an appropriate motion to seal (pursuant to Local Civil Rule 5.3(c)) is filed within fourteen (14) days of this Opinion and Order.

**SO ORDERED**.

*/s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**